Thurman, C. J.
April 15,1845, Almy recovered a judgment, in forcible detainer, against Aubrey, before a J. P. December 2,1845, the judgment was reversed, on certiorari, by the common pleas, and the cause retained for trial. November 16, 1846, a trial was had, a verdict of guilty rendered, and a motion for a new trial made by Aubrey; which, after several continuances, was withdrawn December 30, 1847, and a judgment rendered upon the verdict, that Almy recover his costs and have restitution. Thereupon, Almy moved the court to impanel a jury to inquire into and assess the value of the rents and damages to which he had become entitled after the service of the notice to quit, or, at least, after the service of the summons; which motion was overruled, and he excepted. May, 1848, the Supreme Court in Hamilton county, upon certiorari prosecuted by Almy, reversed the order overruling said motion, and awarded a writ of procedendo to the common pleas. December 17, 1850, the common pleas, in obedience to the writ (after overruling a motion of Aubrey to dismiss the cause), impaneled a jury, who returned a verdict for Almy of $396.41. Aubrey moved for a new trial, and also in arrest of judgment, both which motions were overruled, and he excepted. Judgment being rendered upon the verdict, this writ of error is prosecuted to reverse it.
Yarious errors are assigned, some of which go to the judgment of restitution, and impeach the jurisdiction of the court to render it. The facts in proof, it is said, presented a controversy in respect to the title to the premises, a question that could not be *tried in an action of forcible detainer. If this position is correct, both in *527 fact and law:, there was a valid defense to the action, but it is not perceived that there was a want of jurisdiction. It was not the province of the court to find the facts — that was the business of the jury; and if the facts, when found by the jury, were such as, under the law laid down by the court, would not support an action of forcible detainer, the verdict should have been not guilty. Upon such a verdict the court could have rendered judgment; whereas, if it was wholly without jurisdiction, it could render no judgment at all, except to order the case to-be stricken from the docket.
But all this is immaterial here, for the reason that no bill of exceptions setting out the facts proved, was taken, and we can not, therefore, know what the facts were. The bill taken before the justice of the peace in 1845, and that taken in the common pleas on the-trial in 1850, are no evidence of what was proved on the trial in 1846.
And here I may add, that the common pleas had not erred in retaining the cause for trial after reversing the justice’s judgment; for even tif the transcript showed that the justice should have rendered a judgment for the defendant before him, because the proof made a case of controverted title in which forcible detainer would not lie, it did not follow that the proof would be the same in the, common pleas. Justices had jurisdiction of the action of forcible detainer, and when their judgments were reversed by the common pleas, the statute required the cause to be set down for trial in the latter court.
Again, we are restricted by the writ of error, to the judgment of November term, 1850, for that is the only judgment mentioned in the writ, the only one it seeks to review.
That the court of common pleas was bound to obey the writ of procedendo from the Supreme Court, is obviously true; from which it follows, that if we reverse their judgment, we disregard the decision of the Supreme Court. But, however inconvenient *in practice this may be, we do not perceive how it can be avoided, if we find the judgment to be erroneous. The decision is plainly no bar to the present writ, the object of which is to reverse a judgment rendered long after the decision was made; and although the question presented is the same as that formerly decided, it would have been equally so had the decision been made between different parties. It is unnecessary to consider what would be the proper practice had the procedendo been awarded by the court of the last resort *528 —the Supreme Court in bank — for it was ordered by no such tribunal. It is true, that the court in bank was but a special session, of the Supreme Court; nevertheless, the Supreme Court on the circuit was so far an inferior tribunal that its judgments were reversible by the court in bank, and are so by this court.
The question upon which this case turns is : was it lawful to assess and give judgment for Almy’s rents and damages, in the action, and mode in which it was done ? The solution of this question depends upon the construction to be given to certain sections of the act of 1831, regulating proceedings in forcible entry and detainer. Swan’s Statutes, old ed., 419, 420. By this act jurisdiction in forcible entry and detainer was conferred upon two justices of the peace, subject to review, upon certiorari, by the court of common pleas. By section 10, the plaintiff in certiorari is required to give bond to the defendant, “conditioned for the faithful prosecution of the said suit; and in case of failure, that he will pay all costs, rents and damages, which may be assessed to the defendant in certiorari, as hereinafter provided.” By sections 11 and 12, it is enacted, that if the judgment of the justices shall be reversed, tho plaintiff in certiorari shall recover costs, and the court shall retain the cause and proceed thereon to final judgment, as in cases of appeal, and if on trial, the jury find the defendant guilty of forcible •entry and detainer, or forcible detainer only, the court shall render judgment for costs, and that the complainant have restitution of the premises. Sections 13 and 14 are as follows:
*“ Seo. 13. That if the plaintiff in certiorari shall fail or neglect to prosecute the said suit to final judgment, or if the judgment and proceedings in the court below shall be affirmed; then, and in every such case, the court of common pleas, on motion of the defendant or his-counsel, shall render judgment affirming tho judgment and proceedings below, and for costs; and shall award execution therefor, as in other cases.
“Seo. 14. That thereupon, if the plaintiff in 'certiorari were’ defendant below, it shall be the duty of the court, on motion, to direct a jury to be impaneled and sworn, to inquire into and assess the value of 'the rents accrued, and damages, if any, sustained, from and after the day on which notice to quit was served on such plaintiff in certiorari; or if no such notice was given, then from the time such plaintiff in certiorari was summoned in the proceedings below.”
*529 ¥e think it quite clear, that the only authority here given to assess rents and damages, is in cases where the judgments of the1 justices are affirmed; in other words, section 14 relates only to the cases mentioned in, the 13th, and the condition of the bond relates to the same cases. There is no provision for any such assessment if the justice’s judgment is reversed, nor was any such thing Contemplated. If it had been, the jury impaneled to try the issue of guilty or not guilty, would have been authorized to make the assessment, for surely no such absurdity could have been designed, as that there should be one jury to try that issue and another to assess the rents and damages. But this absurdity is inevitable, upon any other construction than that we have arrived at; for it is admitted, and correctly too, that no authority is given to the jury that tries the issue to make any assessment.
The language of the act, also, is sufficiently plain, especially when proper regard is paid to its connection. The “ faithful prosecution of the said suit,” which is a condition of the bond, means a prosecution of the writ of certiorari; and there has been *such faithful prosecution when a judgment of revei’gal is obtained. The “case of failure,” mentioned in the bond — and upon the happening of which a liability to pay costs, rents, and damages, “ as hereinafter provided,” is incurred — is a failure to obtain a judgment of reversal. When a reversal takes place, “ the said suit” of certiorari spoken of in the bond, has no longer an existence, and the cause is retained “ as in cases of appeal.” The connection between the 13th and 14th sections shows that they are upon the same subject, and, with the other considerations I have mentionéd, makes it apparent, that the latter is limited to the cases specified in the former, which are all cases of affirmance.
It results from these views that the judgment in question must be reversed.